UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DSS TECHNOLOGY MANAGEMENT, INC. | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. 6:15-CV-692 |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| QUALCOMM INCORPORATED. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**QUALCOMM INCORPORATED'S MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................1

        A.      The Patents And The Technology.................................................................2

        B.      DSS's Unconvincing Connections To This District ...................................2

        C.      Qualcomm And Its Foundries ......................................................................3

        D.      Motions To Transfer In Other DSS Cases ..................................................6

III.    ARGUMENT ...........................................................................................................6

        A.      Legal Standard .............................................................................................7

        B.      Venue Would Have Been Proper In The Southern District Of California .............8

        C.      The Private Interest Factors Weigh In Favor Of Transfer ...........................8

                1.      Cost of attendance for willing witnesses favors California .......................8

                2.      Compulsory process over nonparties is available in California................12

                3.      Ease of access to sources of proof favors California ...............................13

                4.      No other practical problems outweigh the convenience of
                        California ...................................................................................14

        D.      The Public Interest Factors Weigh In Favor Of Transfer ...........................14

                1.      Local interest favors the Southern District of California...........................14

                2.      Court congestion is not significantly different between districts..............15

                3.      Law familiarity is neutral; conflict of laws is neutral ...............................15

IV.     CONCLUSION......................................................................................................16

CERTIFICATE OF CONFERENCE.........................................................................18

CERTIFICATE OF SERVICE .................................................................................18

## TABLE OF AUTHORITIES

### Cases

*In re Acer Am. Corp.*,
   626 F.2d 1252 (Fed. Cir. 2010)............................................................................8, 12

*In re Apple, Inc.*,
   No. 2014-143, 2014 WL 4460397 (Fed. Cir. Sept. 11, 2014) ...........................12, 14

*Chrimar Sys. v. Ruckus Wireless, Inc.*,
   6:15-cv-638 ....................................................................................................11, 15

*Core Wireless Licensing S.a.r.l. v. Apple, Inc.*,
   Case Nos. 6:14-cv-751-752-JRG-JDL (E.D. Tex. Aug. 31, 2015).........................12

*DSS Tech. Mgm't, Inc. v. Apple, Inc.*,
   No. 6:13-cv-00919, 2014 WL 6847569 (E.D. Tex. Nov. 17, 2014)........................1, 6, 11, 13

*DSS Tech. Mgm't, Inc. v. Intel Corp. et al.*,
   No. 6:15-cv-00130 (E.D. Tex.)............................................................................6, 14

*Evolutionary Intelligence LLC v Apple, Inc.*,
   No. 6:12-cv-00783, 2013 WL 8360309 (E.D. Tex. Aug. 27, 2013).........................8

*Fujitsu Ltd. v. Tellabs, Inc.*,
   639 F. Supp. 2d 761 (E.D. Tex. 2009) ..................................................................13

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).......................................................8, 9, 13, 15

*In re Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) .......................................................................13

*Hoffman v. Blaski*,
   363 U.S. 335 (1960)..............................................................................................14

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011).............................................................................11

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)..........................................................................7, 9

*Paramount Pictures, Inc. v. Rodney*,
   186 F.2d 111 (3d Cir. 1950)..................................................................................14

*Saint Lawrence Comms. LLC v. LG Electronics, Inc.*,
   No. 2:14-cv-1055-JRG, 2015 WL 7854738 (E.D. Texas Dec. 3, 2015) ................12

*See In re EMC Corp.*,
   677 F.3d 1351 ......................................................................................................15

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ............................................................................14

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .................................................................................7

*In re Volkswagen of America, Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................................7, 8, 12, 14, 15

### Statutes

28 U.S.C. § 1400(b) ....................................................................................................8

28 U.S.C. § 1404(a) ...................................................................................7, 8, 12, 16

Fed. R. Civ. P. 45(c)(1)(B) .......................................................................................12

## I.  INTRODUCTION

The Eastern District has already held that Plaintiff DSS Technology Management, Inc.'s ("DSS") connections to this venue are too "ephemeral" to permit this District to retain a case against a California Defendant. *DSS Tech. Mgm't, Inc. v. Apple, Inc.*, No. 6:13-cv-00919, 2014 WL 6847569, at *3 (E.D. Tex. Nov. 17, 2014). Yet, DSS still persists in its attempts to litigate in this District. In essentially a repeat of the *Apple* case, a Virginia Plaintiff (DSS) has sued a California defendant (Qualcomm Incorporated) even though the Virginia Plaintiff and the alleged infringement have virtually no ties to this District. The U.S.-based witnesses most knowledgeable about the accused products reside in California, as do the inventors, as does the original assignee corporation. Virtually all of the accused products themselves are manufactured abroad in Asia. Nearly every aspect of this case arises out of activities occurring in California or abroad, and relevant witnesses and documents, to the extent they are in the United States, are in California. This case, like the *Apple* case, should be transferred to the Southern District of California.

## II.  BACKGROUND

Plaintiff DSS Technology Management, Inc. ("DSS") has its principal place of business in Reston, Virginia. (Ex. 1[1] ¶ 3.) DSS is purportedly a wholly owned subsidiary of Document Security Systems, Inc. ("DSSI"). (Dkt. 7; Ex. 1 ¶ 6.) DSSI's corporate headquarters is in Rochester, New York. (Ex. 17.)

---

[1] References to "Ex." herein are to exhibits to the Declaration of Marc Kaplan in support of Qualcomm's Motion to Transfer Venue.

## A.      The Patents And The Technology

DSS asserts two expired patents against Qualcomm Incorporated ("Qualcomm"), U.S.

Patent Nos. 5,965,924 (the "'924 patent") and 6,784,552 (the "'552 patent). These patents relate

to the design of transistors used in microprocessors. Transistors are a basic building block of

microprocessors, and act as switches that turn on and off as the microprocessor processes data.

The patents-in-suit recite specific details regarding the structure of transistors. DSS alleges that

various Qualcomm-branded processors manufactured "via a 28 or 20 nanometer process," such

as the "Qualcomm Snapdragon 800 series," infringe claims of the patents-in-suit. (Dkt. 1 at 5.)

DSS did not itself develop the technology of the patents-in-suit. The original assignee of

the patents-in-suit was Cypress Semiconductor ("Cypress"), and the patents name former

Cypress employees as inventors. (*See* Dkt. 1-1; Dkt. 1-2.) Cypress allegedly transferred the

patents-in-suit to DSS in a September 23, 2013 agreement signed by J. Augusto De Oliveira,

who resides in the "San Francisco Bay Area." (Exs. 3-5, 44.) Cypress is headquartered and has

its principal place of business in the San Francisco Bay area. (Ex. 2.)

The named inventor of the '924 patent is Ting P. Yen, and the named inventors of the

'552 patent are James E. Nulty and Christopher J. Petti. (Dkt. 1-1; Dkt. 1-2.) All three inventors

of these patents reside in the San Francisco Bay area. (Ex. 6; Ex. 7; Ex. 8.)

## B.      DSS's Unconvincing Connections To This District

DSS's and DSSI's connections to this District are tenuous at best. DSS identified six

alleged employees of DSS in its initial disclosures as having discoverable information. Upon

close examination, these employees all either do not have ties to this district or do not have ties

to the subject matter of this litigation. DSS identified Jeff Ronaldi, Jeff D'Angelo, Peter

Hardigan, Phillip Jones, Kevin Smith, and Kishen Someshwar as potential witnesses. (Ex. 9.)

The first four of these witnesses reside on the East Coast. (Ex. 13; Ex. 43.) Mr. Smith and Mr.

Someshwar purportedly have knowledge of DSS's work in Texas. (Ex. 9.) According to Mr.

Someshwar's LinkedIn profile, he served as an "intern" for less than a year in 2014 in this

District. (Ex. 14.) Mr. Someshwar allegedly worked "10-15 hours per week" in DSS's Tyler

office during that time. (Ex. 1 ¶ 21.) He has not performed any work for DSSI or DSS since

2014. (Ex. 14.) Kevin Smith claims to be the "Director of Hardware Engineering" for DSSI (not

DSS). (Ex. 15.) Though DSS claims that Mr. Smith is employed full time (Ex. 1 ¶ 16), Mr. Smith

continues to hold himself out as a consultant "for hire." (Ex. 15.) Mr. Smith spends only between

10% and 25% of his time performing work for DSS. (Ex. 35.)

Neither DSSI nor DSS manufactures or sells any products related to the patented

technologies. DSS concedes that none of its products or services practice the patents-in-suit. (Ex.

16 at 3.) DSS's initial disclosures identified Mr. Smith and Mr. Someshwar as having knowledge

regarding "DSS hardware development done in TX." (Ex. 9.) But DSSI's "Authentiguard" and

"SensorShield" product hardware is not in any way related to the subject matter of this litigation,

namely the fabrication of semiconductors. "Authentiguard" and "SensorShield" instead purport

to be products to prevent unauthorized copying and to sense environmental factors such as

temperature, light or motion near a shipping product, respectively. (Exs. 11, 12.)

DSS claims to have an office in Tyler, Texas, but does not provide any telephone number

or fax number for that office. (Ex. 17.) Its Texas office is the only DSS office for which DSS's

web site fails to provide a phone number. (*Id.*)

## C.    Qualcomm And Its Foundries

Defendant Qualcomm, together with its subsidiaries, is a leading developer of wireless

communications technology and semiconductor chip products used in wireless communications.

Qualcomm has its corporate headquarters in San Diego, in the Southern District of California.

(Dkt. 27 at 1-2; Declaration of John Snead filed herewith ("Snead Decl.") ¶2.) Its semiconductor

chip business is known as Qualcomm CDMA Technologies ("QCT"), operated by Qualcomm

Technologies, Inc. ("QTI"), together with QTI's respective subsidiaries. QTI also has its

principal place of business in San Diego. QTI is a wholly-owned subsidiary of Qualcomm

Incorporated.

Qualcomm has 93 offices in the United States, 45 of which are located in San Diego with

another 17 located elsewhere in California. (Ex. 18.) The vast majority of Qualcomm and QTI's

relevant document repositories, servers and employees are located in San Diego. (Snead Decl.

¶5.) For instance, Qualcomm and QTI employees identified in Qualcomm's initial disclosures

and with knowledge of QTI's wafer sourcing, inbound licensing, financial practices, orders,

shipping, invoices, and revenue are all located in San Diego. (Ex. 29; Snead Decl. ¶6.)

Qualcomm only has two offices in Texas ("Austin - AUS.B" in Austin and "Richardson -

RIC.B" in Richardson[2]), neither of which is in the Eastern District of Texas. (Ex. 18, 19). The

U.S.-based Qualcomm and QTI employees with the most knowledge of Qualcomm's wafer

procurement and production processes are located in San Diego, not Texas.  (*See* Declaration of

Shawn Cole filed herewith ("Cole Decl.") ¶6.)

Qualcomm-brand semiconductor chip products, including the accused products, typically

incorporate one or more semiconductor dies in an integrated circuit package. Qualcomm does not

produce these dies, but instead outsources manufacture to a third party called a "fab" (short for

semiconductor <u>fab</u>rication plant). An organization that operates fabs is called a "foundry."

Qualcomm's foundries manufacture semiconductor circuits by processing a blank

circular piece of silicon called a "wafer." The method for processing that wafer by Qualcomm's

---

[2] Qualcomm's Richardson location is in Dallas County in the Northern District of Texas. (Ex. 19.)

foundries can be defined by its "process node," a measurement of the distance between identical features in adjacent structures on the chip. The foundries, through a series of complex steps, slowly build semiconductor structures and features onto the blank wafer. After the wafer is completely processed, it is then cut into individual "dies," each of which will be used to create a single processor. The dies are then "packaged" to include, for instance, electrical contacts as well as any additional structures necessary to protect the die. Finally, the package may then be installed in a device, such as cellular phone or tablet.

In this case, DSS is accusing of infringement various Qualcomm processors that were manufactured using the 20 and the 28 nanometer process node. DSS's asserted patents relate to the processes used to fabricate a wafer and the resulting structure. QTI does not itself own any foundry or manufacture the accused 28nm or 20nm semiconductor chip products. Rather, the semiconductor dies are typically manufactured abroad in Asia by one or more third party foundries including Taiwan Semiconductor Manufacturing Company Limited ("TSMC"), Samsung Electronic Co., Ltd. ("SEC"), GlobalFoundries ("GF"), Semiconductor Manufacturing International Corporation ("SMIC"), and United Microelectronics Corp. ("UMC"). (Cole Decl. ¶5.) The wafers for the accused products in this case were purchased by a subsidiary of QTI from the third-party suppliers that manufactured those chip products.

Other than GlobalFoundries (headquartered in California), Qualcomm's foundries have their worldwide headquarters abroad and U.S. headquarters in California. The following table summarizes the location of the headquarters and fabs for Qualcomm's foundries:

| Foundry | Worldwide HQ location | U.S. HQ location | Fab locations |
|---------|----------------------|------------------|---------------|
| TSMC | Taiwan (Ex. 20) | San Jose, CA (Ex. 20) | Asia, including Taiwan (Ex. 38) |

| Samsung | Korea (Ex. 21 at 107) | San Jose, CA (Ex. 21 at 107 (Samsung America); Ex. 22 (Samsung Semiconductor)) | Korea and Austin, TX[3] (Ex. 40) |
|---|---|---|---|
| UMC | Taiwan (Ex. 23) | Sunnyvale, CA (Ex. 23) | Taiwan and Singapore (Ex. 24) |
| SMIC | China (Ex. 25) | San Jose, CA (Ex. 26) | China (Ex. 25) |
| Global-Foundries | Silicon Valley, CA (Ex. 27) | N/A | New York, Vermont, Dresden, Germany, and Singapore (Ex. 28) |

The vast majority of the accused products were fabricated and packaged abroad and then delivered to customers abroad. (Cole Decl. ¶5.) Relevant documents and witnesses of the foundries are likely to be located abroad.

### D.   Motions To Transfer In Other DSS Cases

This is not the first motion to transfer a DSS case to another venue. DSS filed suit against Apple, Inc. in this District, case no. 13-cv-919, and Apple moved to transfer that case to Apple's home district in California.[4] A court in this District granted that motion, finding that DSS's presence in this district was "recent and ephemeral," and that the "greater number of non-party witnesses" and "a large volume of relevant documents" were located in Apple's home district. *DSS Tech. Mgm't, Inc. v. Apple, Inc.*, 2014 WL 6847569, at *3 (E.D. Tex. November 17, 2014).

## III.   ARGUMENT

The Eastern District of Texas has no meaningful connection to this case. No party has a principal place of business in the state of Texas, and no witnesses with knowledge relevant to the claims at issue in the case or relevant documents is located in this District. Neither party even has an office in this District, except for a DSS shell office with a single part time employee. In

---

[3] Samsung's Texas fab did not manufacture wafers for any of the accused 20 or 28nm products. (Cole Decl. ¶ 5.)

[4] Defendant Intel Corp. in *DSS Tech. Mgm't, Inc. v. Intel Corp.*, No. 6:15-cv-00130 (E.D. Tex.) also moved to transfer. That motion was not decided on the merits but was rather denied as moot. (Ex. 41 at 7.)

contrast, Qualcomm and QTI are headquartered in the Southern District of California, the most significant source of evidence and location of witnesses. In addition, the named inventors and the original assignee of the asserted patents, Cypress Semiconductor, are located in California and are subject to the subpoena power of the Southern District. Qualcomm respectfully requests that the Court transfer this case to the Southern District of California.

### A.    Legal Standard

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The initial question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If the initial threshold is met, the movant must show "good cause" by demonstrating "the transferee venue is clearly more convenient." *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *see also In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

Courts weigh the convenience of the current and proposed districts by balancing the private interests of the parties and the public interests in the fair and efficient administration of justice. *Volkswagen*, 371 F.3d at 203. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witness attendance; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id.* A plaintiff's choice of venue is not a factor. *Id*.

**B.      Venue Would Have Been Proper In The Southern District Of California**

Patent infringement lawsuits may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). Qualcomm's principal place of business is in San Diego, California, and this suit could therefore have been brought in the Southern District of California.

**C.      The Private Interest Factors Weigh In Favor Of Transfer**

**1.      Cost of attendance for willing witnesses favors California**

"One important factor in a § 1404(a) calculus is the convenience of the witnesses." *In re Acer Am. Corp.*, 626 F.2d 1252, 1255 (Fed. Cir. 2010). Increased distance from home means increased travel time, meal and lodging expense, and time off work. *Volkswagen II*, 545 F.3d at 317. When, as here, the distance between the transferor and transferee venues "is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* As the number of witnesses in a transferee district increases, the weight in favor of transfer increases. *See Genentech*, 566 F.3d at 1345; *Evolutionary Intelligence LLC v Apple, Inc.*, No. 6:12-cv-00783, 2013 WL 8360309, at *7 (E.D. Tex. Aug. 27, 2013).

The Southern District of California is far more convenient than this District for the vast majority of the witnesses identified in the parties' initial disclosures. A chart summarizing the locations of parties and individuals or entities identified in the parties' initial disclosures as having knowledge relevant to a party's claims and defenses in this case[5] follows (*see* Exs. 9, 29):

| Person or entity | Location |
|---|---|
| Qualcomm and QTI | Headquartered in San Diego, California |
| Reiner Klement, QTI | San Diego, California area |

---

[5] *I.e.*, other than DSS's identification of defendants in other cases.

| Person or entity | Location |
|---|---|
| Rajiv Gupta, QTI | San Diego, California area |
| Dan Gyokery, Qualcomm | San Diego, California area |
| Will Wyatt, QTI | San Diego, California area |
| Alex Tobi, QTI | San Diego, California area |
| Maria Yantz, QTI | San Diego, California area |
| Christopher Maiorana, prosecuting attorney | Detroit, Michigan area |
| Randy Tung, prosecuting attorney | Detroit, Michigan area |
| David Simonelli, prosecuting attorney | Detroit, Michigan area |
| Luis Miguel Acosta, prosecuting attorney | Detroit, Michigan area |
| Paul Rauch, prosecuting attorney | Chicago, Illinois |
| James Nulty, inventor | San Francisco, California area |
| Christopher Petti, inventor | San Francisco, California area |
| Ting Yen, inventor | San Francisco, California area |
| Jeffrey Watt, Cypress Semiconductor | San Francisco, California area |
| Andrew Bateman, Cypress Semiconductor | San Jose, California |
| Cypress Semiconductor, former assignee the patents | San Jose, California |
| TSMC | Headquartered in Taiwan; U.S. headquarters in San Jose, California |
| Samsung Semiconductor Inc. | Headquartered in Korea; U.S. headquarters in San Jose, California |
| GlobalFoundries | Santa Clara, California |
| UMC | Headquartered in Taiwan; U.S. headquarters in Sunnyvale, California |
| SMIC | Headquartered in China; U.S. headquarters in San Jose, California |
| DSS | Headquartered in Virginia |
| Jeff Ronaldi, DSS | Virginia |
| Jeff D'Angelo, DSS | Rochester, New York area |
| Peter Hardigan, DSS | New York |
| Phillip Jones, DSS | Rochester, New York area |
| Kevin Smith, DSS | Princeton, Texas |
| Kishen Someshwar, DSS | Tyler, Texas area |
| Zachary Bishop, Wyrick Robbins | Raleigh, North Carolina |

As is apparent from the above, Qualcomm and QTI's headquarters as well as the knowledgeable party witnesses identified in Qualcomm's initial disclosures are located in the San Diego area, in the Southern District of California. This is significant, because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Nintendo*, 589 F.3d at 1199 (*quoting Genentech*, 566 F.3d at 1338). In addition, many key

9

third parties including the inventors, former assignee, and the headquarters or U.S. headquarters of Qualcomm's foundries, are located in the San Francisco bay area. The San Francisco Bay area is far closer to the Southern District of California (on the order of 500 miles, or a 1.5 hour plane flight) than this District (on the order of 1800 miles, or 5.5 hours of flights). (Exs. 30, 31.)

Other purportedly relevant witnesses are scattered across the country in locations such as North Carolina, Virginia, New York, Michigan, and Illinois. Many of these witnesses, including several witnesses located in North Carolina, Virginia, and New York, only have knowledge regarding DSS's acquisition of the patents-in-suit and are therefore unlikely to testify at trial. (Ex. 9.) In any event, these witnesses would be required to travel long distances regardless of whether the trial occurred in Tyler, Texas or San Diego, California. In addition, the Southern District of California is more convenient for any third party witnesses who reside in Asia.

DSS did identify two employees in this District, Mr. Someshwar and Mr. Smith, claiming that they have knowledge of DSS's hardware development. (Ex. 9; Ex. 1 ¶43.) Specifically, DSS alleges that it engages in hardware development for its Authentiguard and SensorShield products in this District. (Ex. 1 ¶16.) DSS concedes that these products do not practice the patents-in-suit. (Ex. 16 at 3.) In fact, DSS is not in the business of fabricating semiconductors and its products therefore have no relation to the patents-in-suit. DSS's disclosure of those witnesses is a transparent attempt by DSS to tie someone at DSS—regardless of any actual relevance to the case—to this District. The record, however, shows that these witnesses have little relation to DSS, let alone to this case. Mr. Someshwar is a former intern who allegedly worked "10-15 hours per week" in DSS's Tyler office for less than a year. (Ex. 14; Ex. 1 ¶ 21) Mr. Smith, while allegedly engaged full-time by DSS, continues to hold himself out as a consultant "for hire" and

admitted at deposition that he only spends between 10 and 25% of his time working for DSS. (Exs. 15, 35.) The Court should disregard these two individuals for venue purposes.

DSS's operations in this District appear to be an effort to create venue through manipulation. DSS filed its Application for Registration of a Foreign For-Profit Corporation on November 8, 2013, less than three weeks before the filing of DSS's first lawsuit in this district on November 26, 2013, *DSS Technology Management, Inc. v. Apple, Inc.*, case no. 6-13-cv-00919. (Ex. 13.) Similarly, DSS did not begin efforts to look for an office in this District or attempt to hire anyone in this District until November, 2013. (Ex. 1 ¶¶ 14, 15.) DSS further failed to properly maintain its Texas charter, and the state of Texas therefore revoked its charter for violations of the Texas Tax Code. (Ex. 36.) DSS did not seek to revive its charter until July 20, 2015 (Ex. 37), a few days *after* it had filed its complaint against Qualcomm. (Dkt. 1.)

Another Court agreed that DSS's activities in this District in November of 2013 were an attempt to create contacts with this district "in anticipation of filing a lawsuit." *DSS Tech. Mgm't, Inc. v. Apple, Inc.*, No. 6:13-cv-00919, 2014 WL 6847569, at *3 (E.D. Tex. Nov. 17, 2014). That Court transferred DSS's case against Apple out of this district as a result. *Id*; *see also Chrimar Sys. v. Ruckus Wireless, Inc.*, 6:15-cv-638 Dkt. 28 (E.D. Tex. December 9, 2015) (transferring action to Northern District of California where a Michigan plaintiff maintained a single office in Longview, Texas with only one full-time employee). This Court should not "honor connections to a preferred forum in anticipation of litigation and for the likely purpose of making that forum appear convenient." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).

No relevant witnesses are located in this District, while Qualcomm and the witnesses identified on its initial disclosures are located in the Southern District of California. In addition,

the Southern District of California is more convenient for key third party witnesses. This factor weighs heavily in favor of transfer.

## 2.  Compulsory process over nonparties is available in California

"The venue's ability to compel testimony through subpoena power is also an important factor in the § 1404(a) calculus." *Acer*, 626 F.3d at 1255. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. A district court may command a person who "resides, is employed, or regularly transacts business in person" in a state to attend trial in that state if the person "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B); *see Saint Lawrence Comms. LLC v. LG Electronics, Inc.*, No. 2:14-cv-1055-JRG, 2015 WL 7854738, at *3 (E.D. Texas Dec. 3, 2015) (discussing the availability of compulsory process statewide). Courts in this District do not speculate regarding the willingness of third party witnesses to attend trial, lending weight to availability of compulsory process in the venue analysis. *See Core Wireless Licensing S.a.r.l. v. Apple, Inc.*, Case Nos. 6:14-cv-751-752-JRG-JDL (E.D. Tex. Aug. 31, 2015).

The named inventors, Cypress Semiconductor (their employer and original assignee), and its relevant employees are subject to compulsory process in the Southern District of California. Further, it appears that a covenant not to sue may exist between Cypress and one of Qualcomm's foundries (TSMC), which could potentially moot the infringement inquiry for a large number of the accused products. (Ex. 39 at 12.) DSS has not claimed to control any Cypress witnesses. (Ex. 9.) Thus, only by transfer will Qualcomm be able to compel their live testimony at trial.

In contrast, neither party has identified any third party witness that resides in the state of Texas. Given the importance of these third-party witnesses that reside in the transferee state, this factor weighs heavily in favor of transfer. *In re Apple, Inc.*, No. 2014-143, 2014 WL 4460397, at

*3 (Fed. Cir. Sept. 11, 2014) ("This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.").

### 3.     Ease of access to sources of proof favors California

"[T]he bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1346; *see also In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014). The volume of documents relevant to the litigation and their presumed physical location is this factor's focus. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009).

Qualcomm and QTI maintain the vast majority of their relevant document repositories and electronic servers in San Diego. (Snead Decl. ¶5.) These include documents relating to orders, shipping, invoicing, revenues, marketing, inbound licensing, and QTI's relationship with the foundries. (*Id.*) On the other hand, DSS does not possess any relevant documents in this District. DSS does not currently maintain documents related to its patent portfolio at its Texas location. (Ex. 1 ¶5.)[6] Though DSS claims that documents related to DSS's hardware development are located in Plano (Ex. 1 ¶ 43), DSS does not allege that its products practice the patents-in-suit and the products and documents relating to those products are therefore not relevant to this action. In addition, DSS has only a single employee in this District that spends only 10 to 25% of his time working for DSS, so the volume of irrelevant documents related to these alleged DSS hardware development activities will be minimal. This factor favors transfer.

---

[6] In any event, documents related to DSS's patent portfolio were transferred here for the purposes of manipulating venue and should therefore be disregarded in the venue analysis regardless. *DSS Tech. Mgm't, Inc. v. Apple, Inc.*, 2014 WL 6847569, at *3 (E.D. Tex. Nov. 17, 2014) (inferring that DSS moved documents "to this venue in anticipation of filing a lawsuit").

### 4.     No other practical problems outweigh the convenience of California

A Court may consider its experience with a patent in a prior litigation. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The Court's experience with a patent is to be determined based on "the situation which existed when suit was instituted." *Hoffman v. Blaski,* 363 U.S. 335, 343 (1960) (quoting *Paramount Pictures, Inc. v. Rodney*, 186 F.2d 111, 119 (3d Cir. 1950) (Hastie, J., dissenting)). This Court has no substantive experience with the patents-in-suit, and claim construction briefing has yet to commence. Although another case involving the patents-in-suit is pending in this District, *DSS Tech. Mgm't, Inc. v. Intel Corp. et al.*, case no. 6-15-cv-00130, Judge Schroeder has handled all substantive matters in that case. Further, at the time this case was filed, even Judge Schroeder did not have any substantive experience with the patents-in-suit, as claim construction briefing did not commence until December 7, 2015. (*See* Ex. 42.)

In addition, although there are other cases involving the patents-in-suit pending in this Court, the co-pendency of such suits does not necessarily outweigh a more convenient forum even if the transferor district had familiarity with the same patent. *Apple*, 2014 WL 4460397, at *4.

### D.     The Public Interest Factors Weigh In Favor Of Transfer

### 1.     Local interest favors the Southern District of California

This factor looks to the factual connection to the transferee and transferor venue to avoid the burden of jury duty on a community with no relation to the dispute. *Volkswagen II*, 545 F.3d at 318. Here, the Southern District of California is the District in which the accused infringer is headquartered and in which most of its employees are located. (Declaration of Ronald Kuse filed herewith ("Kuse Decl.") ¶4, 5.) The Southern District of California's local interest in this case is therefore significant. On the other hand, the Eastern District of Texas has no local interest in this

14

case. That DSS may have a Plano office with a single part time employee does not imply that residents of this District have an interest or stake in the resolution of this controversy. *Volkswagen II*, 545 F.3d at 318. Instead, the inquiry focuses upon what connection residents have with the events that gave rise to this suit. *Id.* There is none; the local interest weighs in favor of transfer. *See Chrimar Sys.*, 6:15-cv-638 at 13 ("Ultimately, because Ruckus has identified several individuals whose work relates to the accused technology and who are located in the Northern District of California, the Court finds that the Northern District of California has a local interest in the outcome of the litigation.").

### 2.      Court congestion is not significantly different between districts

This factor focuses on the speed of time to trial but is the "most speculative" factor. *Genentech*, 566 F.3d at 1347. The Eastern District of Texas from January 1, 2010 through the present averaged 2 years, 2.4 months to jury trial, while the Southern District of California averaged 2 years, 0.2 months to jury trial. Ex. 32; 33. This factor therefore weighs slightly in favor of transfer. In addition, DSS is a nonpracticing entity and the asserted patents have already expired (Dkt. 1-1; Dkt. 1-2), therefore injunctive relief is not at issue. Thus, even if the Eastern District were faster, transfer would not prejudice DSS because monetary relief would remedy any harm for delay. Moreover, "when, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347. Notably, the asserted patents are expired so DSS can obtain no injunction and the recovery of damages and interest will make it whole.

### 3.      Law familiarity is neutral; conflict of laws is neutral

Federal patent law is uniform across the country. *See In re EMC Corp.,* 677 F.3d 1351, 1354 (Fed. Cir. 2012). Further, both the Eastern District of Texas and the Southern District of

California have local patent rules and commonly dispose of patent cases. (*See, e.g.*, Ex. 34.) The conflict of laws factor is neutral.

## IV.     CONCLUSION

DSS's claim against Qualcomm is unconnected to the Eastern District and heavily connected to the Southern District of California. Thus, pursuant to 28 U.S.C. § 1404(a), and the authority cited herein, Qualcomm moves to transfer the claims to the Southern District of California.

DATED: February 24, 2016     By:   /s/ David A. Nelson

David A. Nelson
davenelson@quinnemanuel.com
Nathan Hamstra
nathanhamstra@quinnemanuel.com
Marc L. Kaplan
marckaplan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN
500 West Madison
Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Fax: (312) 705-7499

Alexander Rudis
alexanderrudis@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Attorneys for Qualcomm Incorporated

**CERTIFICATE OF CONFERENCE**

I hereby certify that the parties complied with the meet and confer requirement under Local Rule CV-7(h).

*/s/ Melissa Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on this the 24th day of February, 2016. Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

*/s/ David A. Nelson*